■ HORTON MEMORIAL HOSPITAL, Respondent, v SULLIVAN'S DEPARTMENT STORE, INC., Defendant; ZURICH INSURANCE COMPANY, Doing Business as ZURICH OF AMERICA, et al., Respondents, and HOWARD S. FINKELSTEIN et al., Individually and Doing Business as FINKELSTEIN, KAPLAN, LEVINE, GITTELSOHN AND TETENBAUM, COUNSELORS-AT-LAW, Appellants.—Yesawich, Jr., J. Appeal from an order of the Supreme Court (Williams, J.), entered January 26, 1988 in Sullivan County, which granted plaintiff's motion for summary judgment and defendant Zurich Insurance Company's cross motion for summary judgment against various defendants.

Mario Molano and his wife, suing derivatively, retained those defendants identified in this action as doing business as Finkelstein, Kaplan, Levine, Gittelsohn and Tetenbaum, Counselors-at-Law (hereinafter the Finkelstein firm) to pursue Molano's personal injury claim against defendant Sullivan's Department Store, Inc. (hereinafter Sullivans). By letter dated October 9, 1984, the Finkelstein firm advised plaintiff, which had treated Molano for his injuries, that upon settlement of the pending negligence action plaintiff's bill for its services would be paid directly from the settlement proceeds. In November 1984, plaintiff filed a hospital lien pursuant to Lien

Law § 189 and served notice of the lien upon the Finkelstein firm and Sullivans' insurer, defendant Zurich Insurance Company, doing business as Zurich of America (hereinafter Zurich).

On October 31, 1985, the Molanos substituted defendant Mitchell Rachlin for the Finkelstein firm as counsel. In an affidavit by an employee, the Finkelstein firm asserts that upon being replaced it mailed Rachlin its Molano file, including copies of the hospital lien, additional notice of the hospital lien and its October 1984 letter to plaintiff. Plaintiff learned of the substitution in November 1985 and, upon reaching Rachlin on December 3, 1985, was informed that the personal injury action had been settled the previous day for $30,000 but that Rachlin did not have a copy of plaintiff's lien. At Rachlin's suggestion, plaintiff forwarded a copy of its lien to Rachlin as a precaution.

The open-court stipulation settling the Molanos' suit, to which plaintiff and the Finkelstein firm were not privy, provided that all liens were to be satisfied from the settlement proceeds. Despite receiving a copy of plaintiff's notice of lien on December 11, 1985, Rachlin's office declined to honor plaintiff's demand for payment and suggested that plaintiff pursue payment from the Molanos, who apparently were then located in South America. Zurich, when it issued the settlement check, included the Finkelstein firm "as attys" as a payee. The Finkelstein firm endorsed the settlement check and the funds were disbursed by Rachlin's office, sometime after December 11, 1985.

Not having been paid, plaintiff commenced the instant action and subsequently moved for summary judgment against each defendant; Zurich cross-moved for summary judgment against Rachlin and the Finkelstein firm. After severing Sullivans from the action, Supreme Court granted both motions as against the remaining defendants. The Finkelstein firm appeals.

There is a triable question of fact regarding the Finkelstein firm's responsibility for plaintiff's lien. The Finkelstein firm maintains that its role in the Molano litigation ended in October 1985 when it no longer represented the Molanos. Its only subsequent act in the litigation, the endorsement of the settlement check, need not necessarily be interpreted as a guarantee of obligations arising from the settlement stipulation. Indeed, since the Finkelstein firm was not involved in the open-court stipulation, we are hard put on this record to see how it could be held to fulfill the terms of that agreement.

The only remaining source of the Finkelstein firm's obligation is the October 1984 letter. To begin with, the letter appears to be nothing more than an acknowledgement of plaintiff's right to payment rather than a guarantee of payment by the law firm. But even viewing it as a guarantee, there are, at the very least, factual issues as to whether Rachlin assumed that obligation upon substitution and whether the Finkelstein firm discharged it when it turned over its file on the case to Rachlin's office (see, Matter of Vega, 94 AD2d 799, 800). Nor can plaintiff's claim that it justifiably relied to its detriment on the October 1984 letter be asserted as a matter of law, for it knew that Rachlin had been substituted as the Molanos' attorney and that Rachlin believed plaintiff had no lien.

Order modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion and defendant Zurich Insurance Company's cross motion for summary judgment against those defendants doing business as Finkelstein, Kaplan, Levine, Gittelsohn and Tetenbaum, Counselors-at-Law; motions denied to that extent; and, as so modified, affirmed. Weiss, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.